# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JEFFERY LINN WALKER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **Case No. CIV-08-1107-HE** |
| | ) | |
| MIKE MULLIN,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Respondent has filed a response to the petition [Doc. No. 12] and the state court transcripts. Petitioner has neither filed a reply nor sought an extension of time in which to do so.[2] The case is at issue. For the reasons set forth herein, it is recommended that the petition be denied.

Petitioner is challenging his conviction, after jury trial, of possession of a precursor

---

[1] Petitioner listed the State of Oklahoma and the Attorney General of the State of Oklahoma as respondents. However, where the applicant is presently in custody pursuant to the state judgment in question, the state officer having custody of the applicant is the properly named respondent. Rule 2, Rules Governing Section 2254 Cases in the United States District Courts. Therefore, Jess Dunn Correctional Center Warden Mike Mullin is the only proper respondent and he has been substituted for the State of Oklahoma and the Attorney General of the State of Oklahoma.

[2] In two letters to the Court, Petitioner mentions that he "wrote a rejection" to the response. *See* Doc. Nos. 8 & 9. However, the Court docket shows that no reply has been filed.

substance (red phosphorous iodine) with intent to manufacture a controlled dangerous substance (Count One); possession of a precursor substance (red phosphorous) without a license (Count Two); possession of a controlled dangerous substance (methamphetamine) (Count Three); and possession of a firearm while committing a felony (Count Four) in Case No. CF-2003-3421, District Court of Oklahoma County. Petition, p. 1. In accordance with the jury's recommendation, Petitioner was sentenced to fifteen years imprisonment and a fine of $50,000.00 on Count One, a fine of $2000.00 on Count Two, three years imprisonment on Count Three, and seven years imprisonment on Count Four. *Id.* The trial court ordered the fifteen year sentence (Count One) and the three year sentence (Count Three) to be served concurrently; the court ordered the seven-year sentence (Count Four) to be served consecutively to Counts One and Three, for a total of twenty-two years imprisonment. Sentencing Transcript dated June 4, 2004, p. 9. Petitioner sought and was granted permission to file an appeal out of time. Response, Ex. 4 (docket in Case No. CF-2003-3421), p. 15. Petitioner filed a direct appeal, and the Oklahoma Court of Criminal Appeals ("OCCA") affirmed his convictions and sentences. Response, Ex. 3. Other than seeking an appeal out of time and filing a motion for sentence modification, Petitioner filed no other applications for post-conviction relief. Petition, p. 3 and Attachments A ("Motion for Hearing to Modify Sentence") and B ("State's Response to Application for Post-Conviction Relief, Motion for New Trial or Alternatively, Motion for Appeal Out of Time"); *see also generally*, Response, Ex. 4 (docket).

Petitioner raises five grounds for habeas relief. In Grounds One and Two, Petitioner

alleges violations of his Fourth Amendment right to be free from unreasonable searches and seizures. In Ground Three, Petitioner alleges that the display of a simulated "Methamphetamine Lab" using items not found at the scene of the crime was provocative and prejudicial. In Ground Four, Petitioner complains that the admission of the evidence of firearms was highly prejudicial and without merit. Petitioner alleges in Ground Five that he was denied effective assistance of counsel.

Respondent contends that Petitioner's Fourth Amendment claims in Grounds One and Two were fully and fairly litigated in state court and therefore habeas relief is unavailable on these grounds pursuant to *Stone v. Powell*, 428 U.S. 465, 494 (1976). Response, p. 3. Respondent further contends that Petitioner is not entitled to habeas relief on the state evidentiary issues raised in Grounds Three and Four because Petitioner was not deprived of a fundamentally fair trial by the admission of the evidence at issue. *Id.*, pp. 3-4. As to Ground Five, Respondent contends that the OCCA's rejection of the ineffective assistance of counsel claims raised on direct appeal was neither contrary to nor an reasonable application of clearly established federal law. *Id.*, p. 4. Respondent also argues that Petitioner has not exhausted his state court remedies as to one of his ineffective assistance of counsel claims but that this claim should be denied on the merits notwithstanding Petitioner's failure to exhaust. Response, pp. 25-26.

**Factual Background**

On August 8, 2002, Oklahoma City police officer Michael Johnson was dispatched to check on the welfare of children residing at Number 33 on Southeast 30th Street in

Oklahoma City, based on a call from the Department of Human Services ("DHS") reporting that their attempts to make contact with the children had been unsuccessful. Tr., pp. 139-40. Upon arrival Johnson knocked loudly on the door and rang the doorbell; receiving no response and noting that there were three cars in the driveway, he proceeded around the house and through a closed gate to check the back door. Tr., pp. 141,149. In the back yard by the garage, Johnson noticed a travel trailer camper with sealed and taped windows and a running air conditioner. Tr., p. 141. As Johnson approached the trailer, he noted an odor emanating from the trailer's front door which he believed to be the smell of green marijuana. Tr., p. 142. Johnson called for backup assistance, and as other officers arrived, Petitioner's brother, a former police officer, also arrived. Tr., pp. 143-44. The officers checked on the children and found them to be all right. Tr., pp. 144-45; 177. The officers then questioned Petitioner about the trailer, and on advise from his brother, Petitioner signed a search waiver of the trailer and informed officers that there were two pistols in the trailer and more firearms in the house. Tr., pp. 146, 158, 178, 223, 459.

Upon entering the trailer Officer John Carroll observed in plain view what appeared to be a marijuana smoking pipe containing burnt marijuana residue and two spoons with residue that field tested positive for methamphetamine. Tr., pp. 224-26, 265. Officer Carroll also observed two pistols and a small safe and a metal lock box. Tr., p. 224. Petitioner informed Carroll that he could not search the safe or lock box, so Carroll stopped the search and informed Petitioner that he was applying for a search warrant. Tr., pp. 226, 263. After obtaining the search warrant, officers searched Petitioner's trailer, garage, vehicle, and home,

Tr., p. 291, and found precursor substances for manufacturing methamphetamine, methamphetamine, marijuana residue, numerous firearms, drug paraphernalia, and many items commonly associated with manufacturing methamphetamine. Tr., pp. 300-312, 314, 316, 318-22.

## Standard Governing Habeas Corpus Review

When a petitioner's claims have been adjudicated on the merits in state court, a federal court may grant habeas corpus relief only if the petitioner establishes that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,", or "was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). Under this standard, judicial review is directed to the result of the state appellate court's decision, not its reasoning. *See Gipson v. Jordan*, 376 F.3d 1193, 1197 (10th Cir. 2004) ("[W]e defer to the [state court's] decision unless we conclude that its result - not its rationale - is 'legally or factually unreasonable'").

A state court decision is "contrary to" clearly established federal law for purposes of § 2254 if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the result reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). A state court decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court]

5

decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "AEDPA's conception of objective unreasonableness lies 'somewhere between clearly erroneous and unreasonable to all reasonable jurists.'" *House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008) (quoting *Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006)), *cert. denied*, 129 S.Ct. 1345 (2009). "Thus, 'only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254.'" *Id.* (quoting *Maynard*, 468 F.3d at 671)). In conducting this deferential inquiry, the Court presumes that the state court factual findings are correct, and the burden of rebutting this presumption by clear and convincing evidence is placed on the petitioner. *See* 28 U.S.C. § 2254(e)(1); *Smith v. Mullin*, 379 F.3d 919, 924-25 (10th Cir. 2004).

## DISCUSSION

### I. <u>Fourth Amendment Claims - Grounds One and Two</u>

In the first two grounds of the petition, Petitioner asserts various violations of his Fourth Amendment right to be free from unreasonable searches and seizures. Specifically, in Ground One, he contends that after there was no response at the front door, Officer Johnson violated the purpose of his visit (a check on child welfare) by going through a closed gate into the backyard and that he had no reason to be near the travel trailer. Petition, p. 4. In Ground Two, Petitioner complains that police officers coerced him into signing a waiver to search the travel trailer. Petition, p. 6.

Citing *Stone v. Powell*, 428 U.S. 465, 494 (1976), Respondent argues that the claim Petitioner raises in Ground Two is not reviewable in a § 2254 action because the claim was

fully and fairly litigated in state court. Response, pp. 12-14. In *Stone*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 494. Such opportunity may be provided either at trial or on direct review. *Id.*, at 494-95 n. 37 ("[W]e hold only that a federal court need not apply the exclusionary rule on habeas review of a Fourth Amendment claim absent a showing that the state prisoner was denied an opportunity for a full and fair litigation of that claim at trial and on direct review ."). *See also Chavez v. Rodriguez*, 540 F.2d 500, 502 (10th Cir. 1976) (*per curiam*) (holding that a hearing on a motion to suppress and the consideration of the issue on appeal satisfied "[t]he dictates of *Stone*"); *Brown v. Sirmons*, 515 F.3d 1072, 1082-83 (10th Cir. 2008).

As Respondent contends, the Fourth Amendment violations Petitioner alleges in Grounds One and Two do not warrant habeas relief because Petitioner had a full and fair opportunity to litigate these claims in state court. Defense counsel filed a motion to suppress challenging the legality of the officers' entry into Petitioner's backyard, the probable cause to search his travel trailer, and validity of Petitioner's initial consent to search the trailer. Response, Ex. 7 (portion of Original Record, "Motion to Quash Consent Search Suppress All Evidence and Dismiss with Brief"). The docket reflects that the trial court held a hearing on the motion to suppress and denied the motion. Response, Ex. 4 (docket entry dated January 8, 2004). On direct appeal Petitioner repeated his Fourth Amendment claims in two separate

propositions. *See* Response, Ex. 1, pp. 9-16. The OCCA rejected both. Response, Ex. 3, pp. 2-4. Specifically, as to Petitioner's claim that the officers entered his backyard illegally (Ground One), the OCCA concluded that

> the record reflects that the purpose of the officers' visit, to check on the welfare of the children, was not completed until well after the time they entered the backyard and observed the camper/trailer. By the time the officers evaluated the welfare of the children, they had already observed the possible occurrence of another crime.

*Id.*, p. 2. The OCCA further found that the "officer's entry onto [Petitioner's] property (and walk around to the backyard) to check on the welfare of children was arguably an exigent circumstance," noting that the officers "did not have the time to get a search warrant before entering [Petitioner's] backyard in an attempt to determine the children's welfare." *Id.*, pp. 3-4. As to Petitioner's claim of coerced consent (Ground Two), the OCCA noted that it applied the same test for voluntariness of consent used in federal courts - a totality of the circumstances – and held that Petitioner's consent for the officers to search the trailer was given "freely and voluntarily." *Id.*, p. 4 (citing *State v. Goins*, 84 P.3d 767, 771 (Okla. Crim. App. 2004), which cited *Ohio v. Robinette*, 519 U.S. 33, 40 (1996)). Under this review, the OCCA specifically found that Petitioner "was not threatened or coerced by the officers into giving his consent for the search" and that "[a]ny hesitation on [Petitioner's] part to sign the waiver seems to have been abated by his brother's advice, not by any threats or coercion by the officers." *Id.*

Because the record clearly shows that Petitioner has had a full and fair opportunity to litigate these claims in state court, his claims in Grounds One and Two should not be heard

in this § 2254 proceeding. *See Stone*, 428 U.S. at 494-95. *See also Smallwood v. Gibson*, 191 F.3d 1257, 1265 (10th Cir. 1999) (affirming denial of federal habeas relief based on alleged Fourth Amendment violations pursuant to *Stone* where petitioner had moved to suppress the evidence resulting from an alleged unlawful seizure, objected to the admission of this evidence at trial and presented the issue to the OCCA on direct appeal); *Magirl v. Dorsey*, No. 98-2129, 1999 WL 273330, at * 1 (10th Cir. May 5, 1999) (unpublished op.) (noting that the court was barred from considering a habeas petitioner's Fourth Amendment claims because the petitioner had "argued that the evidence should be suppressed as the fruit of an illegal arrest . . . in pre- trial proceedings [and] on direct appeal . . . ."); *Washington v. State of Oklahoma*, No. 97- 6272, 1998 WL 327866, at *2 (10th Cir. June 18, 1998) (unpublished op.) (where state courts denied on the merits petitioner's challenge to the constitutionality of a nighttime search both at a suppression hearing in the trial court and on direct appeal, petitioner had a full and fair opportunity to litigate his Fourth Amendment claim). Accordingly, the undersigned finds that Grounds One and Two do not merit habeas relief.

## II. <u>State Court Evidentiary Rulings</u>

In his next two grounds for relief, Petitioner challenges the use and/or admission of certain evidence at trial. In Ground Three, Petitioner alleges that the trial court allowed the prosecutor to display a simulated methamphetamine lab and the use of this display was more prejudicial than probative. Petition, p. 7. In Ground Four, he alleges that the display of a gun in court and the admission of evidence that he possessed guns found in the trailer and

in his home was error because such evidence was more prejudicial than probative. Petition, p. 8.

As a general matter, federal habeas corpus relief does not lie to review state law questions about the admissibility of evidence. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Bullock v. Carver*, 297 F.3d 1036, 1055 (10th Cir. 2002) ("Generally speaking, a state court's misapplication of its own evidentiary rules . . . is insufficient to grant habeas relief."). On habeas review, this Court can only review state court evidentiary rulings "'to determine whether the error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process.'" *Hooker v. Mullin*, 293 F.3d 1232, 1238 (10th Cir. 2002) (quoting *Williamson v. Ward*, 110 F.3d 1508, 1522 (10th Cir. 1997)). In other words, federal habeas relief does not lie for errors of state law absent a determination that the state court's finding was so arbitrary and capricious as to constitute an independent due process violation. *Fields v. Gibson*, 277 F.3d 1203, 1220 (10th Cir. 2002) (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Thus, Petitioner's burden is a heavy one; he must show that the state's failure to follow its own law is arbitrary in the constitutional sense, that is, it must shock the judicial conscience. *Aycox v. Lytle*, 196 F.3d 1174, 1180 (10th Cir.1999). "Because a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self-restraint." *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotation marks and citation omitted). The "[i]nquiry into fundamental fairness requires examination of the entire proceedings, including the strength of the evidence against the

petitioner . . . [and] [a]ny cautionary steps - such as instructions to the jury - offered by the court . . . ."  *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002).

## A.  Demonstrative Evidence - Ground Three

Petitioner alleges that the State was erroneously allowed to display a simulated methamphetamine laboratory using "invented" items, i.e., items that were not actually found in his trailer, which display was provocative and more prejudicial than probative because he actually "had only a couple precursor's (sic) in his trailer."  Petition, p. 7.  He asserts further:

> The display of the "Meth Lab", if it changed only one mind
> is more prejudicial than it could have been probative, if allowed
> to see only the factual display not a invented one the Jury
> would never have come to the conclusion that all items were
> in the trailer they should have seen only the actual evidence
> not invented evidence.

Petition, p. 7

During the State's direct examination of Officers Carroll and Williams, the prosecution used a "demonstration lab" as an aid to the jury's understanding of the process involved in the manufacture of methamphetamine, particularly in the context of a small "mom and pop lab" such as Petitioner was accused of operating.[3]  Tr., pp. 201, 213. Although there are references to this "demonstration lab" throughout the trial transcript, the record does not include any real description of the "demonstration."  It is apparent, however,

---

[3]Some of the items displayed and referred to by the prosecutor in connection with Officer Williams' testimony regarding items found during the search included:  a plastic tote , Tr., pp. 293-94; a one-gallon glass jar, Tr., pp. 294-95; a bottle of drain opener, Tr., p. 296; a 16 ounce plastic soda bottle, Tr. p. 306; and a commercial grade glass flask, Tr., p. 307.

from the record, particularly from the questions posed and the responses given by Officers Carroll and Williams that the "demo lab" involved the use of items "similar" to those found on Petitioner's property although the items used for demonstration purposes were not the items actually seized.

Respondent directs the Court to testimony explaining that certain of the items found in Petitioner's residence had been destroyed because they were either contaminated or constituted a health hazard, Tr., pp. 203-04, 339-53, 373, and therefore similar items were displayed, without objection, to assist the jury's understanding of the materials and precursors used in manufacturing methamphetamine. As Respondent further notes, the officers testified that the lab was only demonstrative and that none of the items displayed were actually found at the Petitioner's residence. Tr., pp. 219-20. Additionally, Officers Carroll and Williams identified photographs of the items actually found on Petitioner's properly during the search and testified regarding how those items were involved in the process of manufacturing methamphetamine as shown by the demonstration lab. Tr., pp. 208, 213-14, 216, 218, 296.

The OCCA determined that the trial court did not abuse its discretion in permitting the State to display the simulated methamphetamine lab during the testimony of Officer Carroll and made the following findings:

> The simulated lab was based on the evidence and introduced solely for illustrative purposes. The jury was informed on more than one occasion that the items in the demonstrative lab were not actually found in the trailer, but they accurately represented what was found by the officers. As the workings of a methamphetamine lab are not commonly know [sic] to most jurors, and

as the jury was repeatedly informed on the limited purpose of the demonstrative exhibit, the probative value of the simulated lab was not outweighed by any prejudicial impact and therefore properly admitted.

Response, Ex. 3, p. 4. Pursuant to 28 U.S.C. § 2254(e)(1), the unrebutted determinations of fact by the OCCA are presumed correct. *See Toles v. Gibson*, 269 F.3d 1167, 1182 (10th Cir. 2001).

When no particular constitutional guarantees are implicated, evidentiary objections raise questions merely of state law and, therefore, are cognizable in a federal habeas action only if the alleged error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process. *Harris v. Poppell*, 411 F.3d 1189, 1197 (10th Cir. 2005); *Revilla v. Gibson*, 283 F.3d 1203, 1212 (10th Cir. 2002); *Bullock v. Carver*, 297 F.3d 1036, 1055 (10th Cir. 2002) ("Generally speaking, a state court's misapplication of its own evidentiary rules . . . . is insufficient to grant habeas relief.").

In this case, the undersigned finds that the use of the simulated methamphetamine lab for demonstrative purposes did not deny Petitioner's right to due process. First, the jury was well-informed of the limitations of such evidence.[4] Second, because Petitioner's intent was key to the charge of possession of precursor material with intent to manufacture a controlled dangerous substance, the demonstration assisted the jury in understanding the use of common household materials, such as those found in Petitioner's residence, in the process of manufacturing methamphetamine. Moreover, photographs of the actual items found on

---

[4] Defense counsel also made it clear to the jury that the items being displayed in the demonstrative meth lab were not the same items taken from Petitioner's property. Tr., p. 254.

Petitioner's property were introduced into evidence. *See e.g.*, Tr. pp. 203-04; 318-20. Finally, evidence regarding the actual substances, including the precursor materials, found on Petitioner's property was presented through the testimony of a forensic chemist, who had tested samples taken from the various containers found on Petitioner's property. Tr., pp. 393-96.

Under these circumstances, the undersigned finds that Petitioner has failed to show that the use of the demonstrative lab resulted in a denial of fundamental fairness. Accordingly, the OCCA's rejection of this claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1) and (2). It is therefore recommended that relief be denied as to Ground Three.

## B. Admission of Evidence of Firearms - Ground Four

In Ground Four Petitioner raises an objection to the State's "using the weapons and displaying one weapon" which he claims was "highly prejudicial and without merit as the [Petitioner] was also a gun smith and collector." Petition, p. 8. He asserts further that:

> [t]he showing of the gun in court did nothing but prejudice the Jury further, it was used to say the [Petitioner] was a manufacturer of Meth and used guns to protect his supposed "Meth" operation. The gun was used to enhance punishment. There was never a "Meth Lab", only precursors, so possession of a Fire arm while committing a felony is just not true. The guns were all under lock and key and the [Petitioner] at no time had one on his person.

Petition, p. 8.

14

The two pistols found in Petitioner's travel trailer were admitted into evidence without objection, Tr., pp. 301-02, and testimony by officers established that Petitioner had numerous other guns and rifles in his trailer and in his home. Tr., pp. 316, 334, 336.

In rejecting Petitioner's claim that under Oklahoma law such evidence should have been excluded as more prejudicial than probative, the OCCA stated the obvious conclusion that evidence of the firearms found in Petitioner's trailer was properly admitted as relevant to proving the charge of possession of a firearm while committing a felony. Response, Ex. 3, p. 5. The OCCA also rejected Petitioner's claim that the State failed to establish "that there was a working methamphetamine lab any where on [Petitioner's] property and therefore there was " no evidence at all that firearms were ever used in any way during any felony." *Id.* The court held that "the State did not need to prove the existence of a working methamphetamine lab, only that [Petitioner] possessed the weapons and precursor substances with the intent to manufacture methamphetamine." *Id.*[5]

As with his claim in Ground Three, Petitioner must establish that the admission of the challenged evidence fatally infected the trial and denied the fundamental fairness that is the essence of due process. *Harris*, 411 F.3d at 1197. The elements of possession of a weapon during the commission of a felony are: (1) knowing, (2) willful, (3) possession of, (4) a pistol, (5) while committing a felony offense, (6) possession of the weapon in connection

---

[5]The OCCA also found that Petitioner's reliance on *United States v. Golden*, 102 F.2d 936 (7th Cir. 1996), *United States v. Dickey*, 102 F.3d 157 (5th Cir. 1996), and *Bailey v. United States*, 516 U.S. 137 (1995), was misplaced because those cases, unlike Petitioner's case, involved the use of a firearm rather than possession of a firearm. Response, Ex. 3, p. 5.

with the commission of the felony. *See* Oklahoma Uniform Jury Instructions-Criminal 2d, § 6-38; Okla. tit. 21, § 1287. In addition to showing actual or constructive possession of a firearm, the State must show the existence of a nexus between possession of the weapon and commission of the underlying felony. *See Pebworth v. State*, 855 P.2d 605, 607 (Okla. Crim. App. 1993).[6]

Thus, under state law, the evidence that Petitioner had actual or constructive possession of the firearms in close proximity to the precursor substances and numerous other items used in manufacturing methamphetamine was relevant to proving the charge of possession of a firearm while committing a felony. The undersigned finds that Petitioner has failed to show that the admission of the evidence of firearms denied him of a fundamentally fair trial. Additionally, Petitioner fails to show that the OCCA's decision on this issue was contrary to or an unreasonable application of federal law as established by the Supreme Court. Accordingly, Petitioner is not entitled to habeas relief on Ground Four.

## III.  Ineffective Assistance of Counsel - Ground Five

In Ground Five, Petitioner alleges that he was denied his right to competent counsel. Petition, p. 10. Petitioner describes the following "mistakes" made by counsel: (1) he did not file a timely appeal; (2) he did not "make objections to the prosecutor[']s presentation;

---

[6]In Oklahoma the existence of a nexus is proven by facts indicating that: (1) the perpetrator used the weapon to actually facilitate the commission of the offense; (2) the offender possessed the weapon or strategically located it for use during the commission of an offense; (3) the perpetrator intended to use the weapon for an escape or to use under certain contingencies; or (4) the offender planned to use the weapon in a manner which would constitute a threat of harm. *Pebworth*, 855 P.2d at 607.

(3) he did not listen to his client; (4) he did not "stop the "Methamphetamine Lab" display or the "showing of a gun that was locked up"; and (5) he did not object to the illegal entry to Petitioner's back yard. Petition, p. 10.

Respondent contends that under 28 U.S.C. § 2254(d), Petitioner is not entitled to habeas relief on the ineffective assistance of counsel claims he raised on direct appeal. Response, pp. 17-25. Respondent further contends that Petitioner's last claim that counsel was ineffective for failing to object to the introduction of evidence obtained through an illegal entry into his back yard is unexhausted but should be denied on the merits. *Id.*, pp. 25-28 (citing 28 U.S.C. § 2254(b)(2)). The undersigned agrees.

### A. Ineffective Assistance of Counsel Claims Adjudicated by the OCCA

On direct appeal, Petitioner raised a claim of ineffective assistance of counsel alleging that counsel filed a motion that was only available in civil cases not criminal cases, failed to adequately pursue discovery; failed to adequate object to the introduction of certain items at trial (methamphetamine lab demo and weapons), and failed to file a timely petition in error, resulting in the dismissal of Petitioner's appeal. Response, Ex. 1, p. 19. The OCCA rejected these claims and held that Petitioner had failed to prove that "there is a reasonable probability that, but for any unprofessional errors by counsel, the result of the proceeding would have been different." Response, Ex. 3, p. 6.

To establish that counsel was ineffective, a habeas petitioner must show (1) counsel's performance was constitutionally deficient and (2) counsel's deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 ( 1984). Performance is deficient

if counsel's "representation [falls] below an objective standard of reasonableness." *Id.* at 688. Errors are prejudicial if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Counsel's performance is evaluated from the attorney's perspective at the time the assistance is rendered and considered in light of all the circumstances prevailing at that time. *Id.* at 689. There is a strong presumption that counsel's actions fell within the "wide range of reasonable professional assistance." *Id.* Because both deficient performance and prejudice must be established to prove ineffective assistance, it is appropriate to consider whether prejudice is shown from an alleged error without determining whether counsel performed deficiently. *Id.* at 697. In reaching its decision regarding Petitioner's ineffective assistance claims, the OCCA identified the correct legal principle from the Supreme Court's decisions,[7] and therefore the state court's decision is reviewed to determine whether the rejection of Petitioner's ineffective assistance of counsel claim involved an "unreasonable application" of federal law. *See Paine v. Massie*, 339 F.3d 1194, 1198 (10th Cir. 2003).

In light of this standard, the undersigned finds that Petitioner has failed to show that he was prejudiced from trial counsel's alleged ineffective assistance.[8] First, with respect to

---

[7]The OCCA cited Oklahoma case law that applied the well-established rule set forth in *Strickland, supra*, governing claims of constitutionally ineffective assistance of counsel. *See* Response, Ex. 3, p.6 (citing *Lott v. State*, 98 P.3d 318, 337 (Okla. Crim. App. 2004) for the principle that the court applies *Strickland* in evaluating ineffective assistance of counsel claims).

[8]Although Respondent has assumed Petitioner has raised all of the same factual bases for his ineffective assistance of counsel claim as presented on direct appeal, the undersigned disagrees, and has reviewed only those allegations raised in the petition.

his claim that counsel failed to file a timely appeal, Petitioner cannot show prejudice as he was granted an appeal out of time. Petitioner then filed a timely brief in support of his appeal raising five propositions of error, and the State filed a response to each claim of error. The OCCA reviewed Petitioner's claims of error, the briefs of the parties and the entire record on appeal and affirmed Petitioner's convictions and sentences. Response, Ex. 3. This claim is without merit.

Petitioner also alleges without factual support that counsel "made numerous mistakes . . . did not make objections to the prosecutor['s] presentation, and he did not listen to his client." Petition, p. 10. Although a pro se litigant is entitled to a liberal construction of his pleadings, he is obligated nonetheless to "state the facts supporting each ground." Rule 2(b), Rules Governing Section 2254 Cases. The broad reading of the petition does not relieve a petitioner "of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[N]aked allegations" in a habeas petition are insufficient to establish an entitlement to relief. *Ruark v. Gunter*, 958 F.2d 318, 319 (10th Cir. 1992) (*per curiam*). The undersigned finds that as to these claims, even liberally construing his claims to be those raised on direct appeal, Petitioner has failed to present the Court with sufficient information to review his bare and unsupported allegations that counsel rendered ineffective assistance.

Petitioner also claims, as he did on direct appeal, that counsel failed to object to the use of the demonstrative methamphetamine lab and the admission of evidence of the weapons found in Petitioner's residence. Even liberally reading his claim to include his

argument on direct appeal, the undersigned finds that Petitioner does not state how he was prejudiced by counsel's failures in this regard. In any event, as discussed *supra*, Petitioner has failed to show how the use of the items in the illustrative methamphetamine lab and the admission of evidence of weapons found on Petitioner's property rendered his trial fundamentally unfair. Thus, Petitioner fails to meet the *Strickland* standard with respect to these allegations.

In rejecting Petitioner's claims of ineffective assistance on appeal, the OCCA reasonably applied *Strickland*. As a result, the undersigned recommends that Petitioner's exhausted claims of ineffective assistance of counsel be denied.

### B. Unexhausted Ineffective Assistance of Counsel Claims

Petitioner also alleges that counsel rendered ineffective assistance by failing to object to "the illegal entry to the back yard." Petition, p. 10. Respondent correctly states that this claim has not been raised in the state courts and is therefore unexhausted. As discussed below, this claim is without merit and, therefore despite Petitioner's failure to exhaust this claim, it should be denied. 28 U.S.C. § 2254(b)(2). *See also Hooks v. Ward*, 184 F.3d 1206, 1239 n.35 (10th Cir. 1999) (denying petitioner's § 2254 claim on the merits "notwithstanding [his] failure to exhaust state remedies").

As with his previous claims of ineffective assistance, Petitioner must show that his attorney's performance was constitutionally deficient and prejudicial. *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984). If Petitioner fails to establish either the deficient performance or prejudice prong of the *Strickland* test, this Court need not examine his claim

further.  *Id.* at 697.

Petitioner's claim regarding counsel's alleged failure to object at trial to the admission of evidence seize during the police officers' search can be addressed by application of the *Strickland* prejudice prong.  "[P]rejudice" involves "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  The record shows that prior to trial, defense counsel moved to suppress the evidence, arguing in part that officers entered Petitioner's backyard illegally and thus the discovery of the marijuana odor and subsequent request to search Petitioner's trailer violated his Fourth Amendment rights.  Response, Ex. 7 (Motion to Suppress).  The trial court denied the motion.  Response, Ex. 4 (docket).

Petitioner alleges that he was denied his right to competent counsel because counsel failed to object at trial to the admission of the seized evidence.  The decision whether or not to make an objection at trial is a matter of trial strategy, to which this Court must apply a "heavy measure of deference." *Strickland*, 466 U.S. at 690-91.  In addition to the trial court's denial of a motion to suppress the evidence, on direct appeal the OCCA rejected Petitioner's Fourth Amendment claim based on the alleged illegal entry into his backyard, concluding that the entrance into Petitioner's backyard was proper and arguably done under exigent circumstances.  Response, Ex. 3, pp. 3-4.  Hence, Petitioner has failed to show that the outcome of the trial would have been different even if trial counsel had objected at trial to the admission of the evidence on the ground that the officers illegally entered Petitioner's backyard.  Petitioner has not met the prejudice prong and has therefore not shown a Sixth

Amendment violation warranting habeas relief. *See Strickland*, 466 U.S. at 697. Accordingly, this claim of ineffective assistance of counsel should be denied on the merits.

**RECOMMENDATION**

Based upon the foregoing analysis, it is recommended that the petition for a writ of habeas corpus be denied. Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by April 19, 2010, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 30th day of March, 2010.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE